IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| G.L, a minor, by his parents and next friends,<br>Gary and Vanessa Le,<br>1221 Constitution Avenue, NE,<br>Washington D.C. 20002,<br><br>and<br><br>GARY and VANESSA LE,<br>1221 Constitution Avenue, NE,<br>Washington D.C. 20002,<br><br>    Plaintiffs,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br>A Municipal Corporation,<br>One Judiciary Square,<br>441 Fourth Street, N.W.,<br>Washington, D.C. 20001,<br><br>    Defendant. | **Civil Action No. _____** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Preliminary Statement**

1. This is an action brought by Gary and Vanessa Le ("the parents"), in their own right and on behalf of their son, G.L., alleging that the District of Columbia Public Schools ("DCPS" or "school system"), failed to provide G.L. with the free appropriate public education ("FAPE"), to which he is entitled under the Individuals With Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§1400 *et seq.* DCPS denied this student a FAPE when it failed to propose an appropriate Individualized Education Program ("IEP"), and placement for him for the 2022-23 and 2023-24 school years. The Hearing Officer who heard the administrative Due Process appeal and who decided the action compounded these violations when he ignored the parents' compelling

1

evidence and witnesses, misapplied controlling law, and denied the requested relief. In doing so, the Hearing Officer excused defendant's failure to adhere to applicable authorities governing special education and the provision of FAPE by denying the parents their requested relief of funding and placement at the River School ("River"). Because of any of these errors, the Court should reverse the Hearing Officer's Decision.

## Jurisdiction

2. This Court has jurisdiction pursuant to the IDEA, 20 U.S.C. §§ 1400 *et seq*., and 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. Plaintiffs have exhausted their administrative remedies and seek to reverse the order of a Hearing Officer in the Office of Dispute Resolution of the Office of the State Superintendent of Education, Case Number 2023-0122 (December 11, 2023).

## Parties

4. G.L. is a five-year-old, educationally disabled student who at all times relevant to this action resided in the District of Columbia. His parents, Gary and Vanessa Le, bring this action on G.L.'s behalf and in their own right.

5. The District of Columbia is a municipal corporation receiving federal funds under the IDEA. 20 U.S.C. §§ 1400 *et seq*. DCPS is a local educational agency as defined by 20 U.S.C. § 1401, and as a part of the District of Columbia, receives financial assistance from the United States Department of Education. DCPS is responsible for complying with federal law with respect to the provision of a FAPE to each educationally disabled child in the District of Columbia.

## Factual Allegations

6. G.L. has been found eligible for special education services by DCPS as a student with a Developmental Delay.

7. At fifteen months old, G.L. began attending daycare at the Senate Employee Childcare Center ("SECCC").

8. In the fall of 2021, G.L.'s parents contacted DCPS Early Stages to initiate the special education eligibility process due to parental concerns related to his hyperfocus on animal toys, poor eye contact, and a potential auditory processing issue. His daycare teachers also shared concerns related to his working memory and ability to follow multi-step directions.

9. In response to the parents' referral, the school system completed initial assessments to determine what, if any, special education services G.L. required.

10. In December 2021, DCPS completed a Comprehensive Occupational Therapy Initial Evaluation Report. The evaluator noted that G.L. had a history of, "moderate left occipital deformational plagiocephaly." The evaluator found that his areas of growth included improving his ability to maintain sitting postures for the duration of an activity, decreasing his need for movement input, such as walking, walking in circles and/or jumping during activities, and improving attention during activities. The evaluator also found his fine motor skills were slightly below expectations.

11. In January 2022, DCPS completed a Speech/Language Assessment, which found G.L.'s receptive and expressive vocabulary fell within expectations. The evaluator assessed his pragmatic language skills through parent and teacher reports on the Clinical Evaluation of Language Fundamentals, Second Edition ("CELF-2"), Descriptive Pragmatics Profile. The results suggested that G.L. displayed inadequate communication abilities at school, but adequate abilities at home. Overall, he struggled starting and maintaining play and communication with

classmates and teachers, had trouble with turn taking, struggled introducing new topics, and had difficulty using and understanding nonverbal signals.

      12.      DCPS also completed a psychological evaluation of G.L. in January 2022.  On the Wechsler Preschool and Primary Scale of Intelligence, Fourth Edition ("WPPSI-IV"), G.L. scored in the Low Average range on the Verbal Comprehension Index, Visual Spatial Index, and General Ability Index.  The evaluator concluded that his verbal and visual-spatial reasoning were developing evenly and within the average range when compared to same-age peers, but that he would benefit from staff support.  Similarly, while some of the teacher's responses indicated mildly elevated scores on the anxiety, depression, and attention problems scales on the Behavior Assessment System for Children, Third Edition ("BASC-3"), the evaluator did not find that G.L. had any significant social-emotional or adaptive delays.

      13.      G.L.'s parents and teachers completed the Autism Spectrum Rating Scales ("ASRS"), as part of the DCPS psychological evalaution to assess a wide range of behaviors commonly associated with Autism in children ages two through five.  The parents reported typical responses, but his teachers reported very elevated scores on the following scales:  Social Communication, Social/Emotional Reciprocity, Unusual Behaviors, Stereotypy, Behavioral Rigidity, and Attention/Self-Regulation.  G.L.'s total score on the ASRS suggested that he met the criteria as a child with Autism Spectrum Disorder.

      14.      In January 2022, DCPS also completed an Educational Evaluation of G.L., administering the Woodcock Johnson IV:  Tests of Early Cognitive and Academic Development. He received a High Average score on the Early Academic Skills cluster, with a High Average score on the Letter-Word Identification subtest and Average scores on the Number Sense and

Writing subtests. Based on these results, the evaluator concluded that he would have, "little trouble meeting the early achievement demands of prekindergarten."

15. On January 20, 2022, DCPS convened an IEP meeting to review the evaluations and determine G.L.'s special education eligibility. After reviewing the evaluations, two of the DCPS team members were not in agreement as to what he needed in the classroom. While one team member suggested he would thrive in a general education classroom, the other suggested he displayed ASD characteristics and would require a dedicated aide in the general education setting. The parents found the entire evaluation process disconcerting as the team was not in agreement on what G.L. actually required in order to make educational progress.

16. The IEP team agreed that G.L. was eligible for special education services as a student with a Developmental Delay due to attentional issues.

17. At the end of the January 20, 2022 IEP meeting, DCPS proposed five hours per week of support in the general education classroom, 120 minutes per month of direct speech/language therapy, 120 minutes per month of Occupational Therapy, and 15 minutes per week of behavior support services.

18. The parents were informed that a Location of Services letter would be provided to inform them to identify where DCPS was proposing to implement the January 2022 IEP once the consent form for initial special education services was signed and received by DCPS. His mother shared that changing schools mid-year would be challenging for G.L., and that she was interested in first observing the proposed program, once identified.

19. The parents decided to maintain G.L.'s placement at the SECCC for the remainder of the 2021-22 school year.

20. In the summer of 2022, G.L. was assessed by Capitol Kids Speech Therapy and direct services were recommended to develop his abilities to identify motivation and emotions in others, as well as work on social skills instruction and conversational scaffolding. The report also suggested that his eye contact challenges could be a result of depth perception weaknesses and a visit to a developmental optometrist was suggested. The evaluator recommended that he receive therapy once weekly to work on social and pragmatic communication skills, which his parents began immediately.

21. In November 2022, G.L. was assessed by Fundamentals Pediatric Occupational Therapy Services and subsequently began receiving 60 minutes of direct OT per week.

22. Due to ongoing concerns by G.L.'s parents and teachers at SECCC and continuing questions about his educationalp needs, his parents sought a neuropsychological evaluation by Dr. Sarah Gardner of Rebecca Resnik and Associates in September 2022. Cognitive testing indicated that his verbal and nonverbal intellectual skills were intact, as well as his receptive and expressive language skills. Dr. Gardner found his weakest cognitive area was in verbal visual spatial functioning, which required G.L. to have an understanding of positional words, and is an aspect of functional communication.

23. G.L. was also administered the Autism Diagnostic Observation Schedule, Module Two ("ADOS-2"), as part of Dr. Gardner's evaluation and the results indicated that he had delays in the areas of reciprocal communication, shared attention, verbal communication, and play. He also demonstrated atypical levels of inflexibility/rigidity, repetitive behaviors, and restricted interests.

24. Dr. Gardner diagnosed G.L. with Autism Spectrum Disorder, Level 1 Social Communication, Level 1 Restricted, Repetitive Patterns of Behavior, Without Accompanying

Intellectual Impairment, Without Accompanying Language Impairment ("Autism" or "ASD"). Due to his Autism diagnosis, Dr. Gardner determined that G.L.'s previous diagnosis of Social (Pragmatic) Communication Disorder no longer applied because his ASD diagnosis explained his restricted interests and executive functioning challenges. Additionally, she deferred an Attention Deficit Hyperactivity Disorder ("ADHD"), diagnosis, due to his age, as well as clinical observations which suggested that his attentional control challenges were more related to an internal dialogue or intense interests associated with Autism, rather than an ADHD condition.

25. Dr. Gardner concluded that, "given the behavioral and social challenges, [G.L.] will need intensive interventions to make an appropriate rate and level of progress." The impacts of his ASD could be seen in the following ways: delays in social reciprocity, difficulty engaging in shared/joint attention; difficulty being flexible, perseveration, delays in learning to use language for functional communication, delays in reciprocal communication, difficulty grasping expectations, difficulty shifting attention and sustaining attention, and a low threshold for becoming overstimulated or overwhelmed.

26. Dr. Gardner described that an appropriate educational setting for G.L. would have the following supports: special education teachers and Applied Behavioral Analysts ("ABA"); small group setting with high teacher to student ratio; daily speech language therapy; social skills and play skills instruction; data collection to track progress; multi-sensory instruction; predictable structure and routine; and access to sensory regulation tools.

27. On October 5, 2022, the parents reached out to DCPS to re-open G.L.'s case to review Dr. Gardner's report, which provided detailed and comprehensive recommendations regarding his educational programming. They signed and returned the consent for the initial provision of special education services.

28. On October 11, 2022, the parents followed up to check on the status of the Location of Services letter and also again offered to send Dr. Gardner's report for the school system's review and consideration. They were told that the evaluation would be added to G.L.'s file and could be reviewed by an IEP team at the 30-day review after he began attending his DCPS placement.

29. On October 24, 2022, G.L.'s parents received a letter indicating his IEP would be implemented in the general education classroom at Maury Elementary ("Maury").

30. The parents promptly reached out to Stefanie Gordon, the LEA representative at Maury, to gain more information about the proposed program. She informed the parents that the pre-Kindergarten was a mixed class of preK3 and preK4 students, but G.L. would receive preK4 instruction. Ms. Gordon shared that the class consisted of 20 children and his special education instruction would be provided during "share-outs, centers, and journal entry." G.L.'s parents asked to observe the program, but were told that might not be possible.

31. Based on Dr. Gardner's recommendation, G.L.'s parents applied, and he was accepted into, the River School, a private, independent school in Washington, D.C. that could provide related services throughout the school day in very small classes.

32. On November 11, 2022, the parents served notice on DCPS of their intent to place G.L. at the River School beginning on November 28, 2022, due to the school system's failure to appropriately determine G.L.'s eligibility for special education services, its failure to fully evaluate his educational needs or consider relevant evaluative data, its failure to develop an appropriate IEP or placement that could meet G.L.'s unique needs, and its failure to comply with applicable timelines as it related to G.L.'s special education eligibility and services. The parents

8

requested funding for his placement at River due to these failures, which DCPS declined in a letter on December 6, 2022.

33. In response to the parents' notice letter, DCPS convened a meeting on January 13, 2023 to review and update G.L.'s IEP. The parents, through counsel, requested that DCPS turn the meeting into a planning meeting because there was a lot of new information that had not been included, and the parents had not had a chance to review the draft IEP, which had been updated in the DCPS system prior to the meeting but not included in the draft IEP sent home to the parents in advance of the meeting. The parents also questioned why the school system was not conducting a formal review of G.L.'s recent evaluation, but were told that since he had an active eligibility status, DCPS would not be reviewing the report or his eligibility classification. Instead, DCPS suggested updating the IEP and allowing the parents to review and provide feedback during the weeks after the meeting, and insisted on moving forward with the meeting.

34. Meredith Ouellette, the Clinical Director at the River School, participated in the January 2023 IEP meeting and shared that G.L. was improving in his ability to join peer activities, but required teacher support to initiate peer interactions. She shared that he could "get stuck," and provided an example of G.L. putting away blocks in a particular order before transitioning, but when another student joined, he had to start over putting the blocks away so that they were put back "the right way" in his perception.

35. Upon discussion of service hours at the end of the January 13, 2023 IEP meeting, DCPS continued to propose just five hours per week of specialized instruction in the general education setting. The DCPS team shared that the special educator had flexibility in how these hours were implemented. The parents, through counsel, shared their belief that the services hours were insufficient and that G.L. required a highly structured, small, specialized environment

throughout the school day, like his program at River. The parents asked if Maury would be the proposed placement, and were told that a Location of Services letter would be sent to them.

36. On February 8, 2023, G.L.'s parents received the Location of Services letter again placing him at Maury. That same day, they requested to observe the program, which was met with no response.

37. The parents followed up on again on March 1, 2023 with Maury seeking an observation of the proposed program. Ms. Gordon shared that they did not allow classroom observations, but provided a link of a virtual tour and suggested that the parents attend an upcoming open house. The parents shared that it was important for them to visit the proposed program in order to determine its appropriateness for G.L., but were again met with no response from Ms. Gordon. On March 7, 2023, they followed up again asking when they could attend an open house.

38. On March 13, 2023, the parents received an email from DCPS informing them that G.L.'s offer of placement at Maury had expired.

39. Finally, on May 25, 2023, the parents received an email from Early Stages offering to connect them with Maury to schedule an observation of the proposed program.

40. On June 14, 2023, G.L.'s mother was able to observe both the Pre-K and Kindergarten classrooms at Maury, as well as to speak with the Maury principal, Ms. Payne Chauvenet. The pre-K class had seventeen students in it, with a mix of three and four year olds, and the parent was told that the Kindergarten class would have up to 22 students in it next year. G.L.'s mother was told that two adults would be present in the Kindergarten classes, a teacher and an aide, but in two Kindergarten classes observed only one adult was present. Additionally, the parent observed nearly all of the teachers and aides using their cell phones in all of the

observed classrooms. G.L.'s mother remained concerned about the large setting at Maury, as well as the number of transitions throughout the day to different places in the school.

41. The parents filed a request for due process on June 27, 2023 and a due process hearing was convened in November 2023.

42. At hearing, G.L.'s parents presented evidence and testimony from Dr. Rebecca Resnik, an expert in psychology; Meredith Ouellette, the Director of Clinical Services at the River School and an expert in speech language pathology; and G.L.'s mother.

43. DCPS presented testimony at hearing from Caitlin Kawa, DCPS school psychologist; Daisy Smiley, DCPS speech and language pathologist; Wanda Banks, DCPS Occupational Therapist and an expert in Occupational Therapy; Shakeya Santa Cruz, DCPS Occupational Therapist and an expert in Occupational Therapy; and Maria Espiritu, Early Stages Evaluation Coordinator and an expert in special education.

44. During the hearing, the Hearing Officer improperly permitted opinion testimony from non-expert witnesses for DCPS.

45. During the hearing, the Hearing Officer incorrectly struck the opinion testimony of Dr. Resnik due to the perceived failure to disclose evaluations relied upon in forming her opinion, and improperly denied the parents' request for a continuance to allow for disclosure of the documentation.

46. During the hearing, the Hearing Officer erronesouly failed to admit properly disclosed supplemental disclosure documents by the parents and improperly limited the scope of their rebuttal testimony.

47. The Hearing Officer issued his Decision on December 11, 2023, denying the parents their requested relief.

48. The Hearing Officer improperly concluded that the parents failed to make a *prima facie* case that the January 20, 2022 IEP was inappropriate to meet G.L.'s needs.

49. The Hearing Officer incorrectly concluded that the parents failed to make a *prima facie* case that DCPS failed to provide a location of services for G.L. for the 2022-23 school year.

50. The Hearing Officer erroneously concluded that the parents failed to make a *prima facie* case that DCPS failed to propose an appropriate location of services for G.L. in October 2022.

51. The Hearing Officer correctly concluded that DCPS failed to meet its burden of proving that it developed an appropriate IEP for G.L. on January 13, 2023.

52. The Hearing Officer erroneously concluded that the school system's refusal to allow the parents to observe the proposed program for G.L. until June 2023 did not deny G.L. a FAPE.

53. The Hearing Officer improperly concluded that River was not proper for reimbursement and incorrectly denied the parents all reimbursement for G.L.'s placement there.

54. The Hearing Officer improperly gave dispositive deference to the school system's witnesses and their opinions over the often unrebutted expert opinions of the parents' witnesses.

55. The Hearing Officer frequently misstated the evidence.

56. The Hearing Officer's Decision contains multiple errors of fact and law.

57. Many of the Hearing Officer's findings of fact are not regularly made.

58. The Hearing Officer applied incorrect legal standards in reaching his Decision.

59. The parents are aggrieved by the Hearing Officer's Decision.

60. The parents have exhausted their administrative remedies.

## COUNT I

(Failure to provide a Free Appropriate Public Education)

61. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 60.

62. Defendant's failure to provide G.L. with a Free Appropriate Public Education violates plaintiffs' rights under the IDEA and District of Columbia law.

## COUNT II

(Failure to Order Appropriate IDEA Relief)

63. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 60.

64. The failure of the Hearing Officer to order defendant to place and fund G.L. in an appropriate program and placement violates the IDEA and District of Columbia law.

## COUNT III

(Failure of the Hearing Officer to Render a Proper Decision)

65. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 60.

66. The Hearing Officer committed error and violated plaintiffs' due process rights under the IDEA and District of Columbia law by failing to render a proper decision based on an accurate and impartial understanding of the facts.

67. The Hearing Officer committed error and violated the plaintiffs' due process rights under the IDEA and District of Columbia law by failing to apply correct legal standards.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

1. Issue judgment for plaintiffs and against defendant;

2. Issue injunctive relief, vacating the order of the Hearing Officer and ordering defendant to reimburse plaintiffs for the tuition expenses and costs incurred in enrolling G.L. at The River School for the 2022-23 and 2023-24 school years;

3. Order defendant to place and fund G.L. at the River School and declare it to be his current educational placement under the IDEA;

4. Order defendant to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

5. Award any other relief that this Court deems just.

Respectfully Submitted,

/s/  Michael J. Eig

| | |
|---|---|
| Michael J. Eig | #912733 |
| Paula A. Rosenstock | #494580 |
| Matthew B. Bogin | #911552 |
| Meghan M. Probert | #1004929 |

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

*Counsel for Plaintiffs*