## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| G.L., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | No. 24-cv-00280-TSC/ZMF |

### REPORT AND RECOMMENDATION

Plaintiffs, G.L. and his parents, bring this action against the District of Columbia Public Schools ("DCPS"), alleging violations of the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. § 1400–82.

On June 27, 2023, G.L. filed a due process complaint and hearing request under the IDEA seeking reimbursement for the tuition and costs G.L.'s parents paid to the River School for the 2022-2023 school year and prospective placement of G.L. at the River School for the subsequent school years. *See* Compl. at 14., ECF No. 6. On December 11, 2023, Hearing Officer ("HO") Terry Banks issued a determination, ruling in favor of Plaintiffs, in part, and in favor of Defendants in part. *See id.* ¶¶ 47–53. Ultimately, HO Banks concluded that G.L. was not entitled to reimbursement for costs paid to the River School or prospective placement at the River School. *See* AR 29.[1] The HO ordered DCPS to arrange an Individual Education Plan ("IEP") meeting within fifteen days to update G.L.'s IEP and determine an appropriate location of services

---

[1] The Administrative Record ("AR") is filed on the Court's electronic docket in six parts at ECF No. 10-1 through ECF No. 10-3. For ease of reference, citations to the AR will refer to the page numbers provided in the upper right-hand corner of each page.

("LOS"). AR 29.

Plaintiffs are appealing the Hearing Officer's Decision ("HOD") and seek injunctive relief to vacate the HO's order, except for the HO's finding that G.L. was denied a Free and Appropriate Public Education ("FAPE") in 2023. *See* Compl. at 14. Specifically, Plaintiffs seek an order compelling Defendant to reimburse Plaintiffs for tuition and costs paid to the River School for the 2022–23 and 2023–24 school years. *See id.* Plaintiffs are also seeking an order for the Defendant to place and fund G.L. at the River School. *See id.* Finally, Plaintiffs seek attorney's fees and costs. *See id.*

Plaintiffs have filed a Motion for Summary Judgement. *See* Pls.' Mot. for Summ. J. ("Pls.' Mot.") 1, ECF No. 11. Defendant has filed a Cross Motion for Summary Judgment requesting that this Court uphold the HOD. *See* Def.'s Opp'n to Pls.' Mot. Summ. J. & Cross-mot. Summ. J. ("Def.'s Cross-mot.") 1, ECF No. 14. The undersigned recommends that this Court DENY Plaintiffs' Motion for Summary Judgement and GRANT Defendant's Cross-Motion for Summary Judgement.

## I.    BACKGROUND

### A.    Statutory Framework

The IDEA aims to provide "every child [with] a meaningful opportunity to benefit from public education." *Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015). Congress enacted the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). "While the District of Columbia is required to provide a FAPE to disabled students, it is not required to, and does not guarantee, any particular

outcome or any particular level of academic success." *Holman v. District of Columbia*, 153 F. Supp. 3d 386, 389–90 (D.D.C. 2016) (citing *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982)).

To satisfy the FAPE requirement, "school districts must develop a comprehensive plan, known as an individualized education program [("IEP")], for meeting the special-educational needs of each student with a disability." *A.W. v. District of Columbia*, No. 12-cv-411, 2014 WL 12884524, at *3 (D.D.C. Sept. 19, 2014) (citing 20 U.S.C. § 1414(d)(2)(A)). "The IEP is a written statement that is reviewed annually and includes goals and instructional objectives for the student's education, services to be provided, projections regarding the dates on which such services are to be offered, and criteria for evaluating whether instructional objectives are met." *Holman*, 153 F. Supp. 3d at 389 (citing 20 U.S.C. §§ 1401(14), 1414(d)(1)(A)). The IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).

"Once the IEP is developed, the school system must provide an appropriate educational placement that comports with the IEP. . . [and if] no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." *B.B. v. District of Columbia*, No. 20-cv-2467, 2022 WL 834146, at *2 (D.D.C. March 21, 2022) (citations and quotation marks omitted). Parents who place their child in private school rather than follow a public school's IEP "are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." *Florence Cnty. Sch. Dist. Four v. Carter by & through Carter*, 510 U.S. 7, 15 (1993).

"[A]ny party" may present a due process complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child or the provision of a [FAPE]

3

to such child." 20 U.S.C. § 1415(b)(6)(A). "Whenever a complaint has been received under (b)(6) . . . the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency." *Id.* § 1415(f)(1)(A). Any party may appeal that decision in court. *See id.* § 1415(i)(2)(A).

> B.    Factual Background

G.L. attended pre-school at the Senate Employee Childcare Center ("SECC"). *See* AR 175, 265, 267. On December 1, 2021, G.L.'s mother requested an evaluation of G.L. out of concern for his auditory processing. *See* AR 7. District of Columbia Public Schools ("DCPS") administered a physical therapy assessment, occupational therapy assessment, psychological evaluation, educational evaluation, and initial speech and language report. *See* AR 175–242. DCPS determined that G.L. was a student with a disability and eligible for special education and related services. *See* AR 247.

> 1.    *January 2022 IEP*

On January 20, 2022, DCPS convened a meeting to develop G.L.'s IEP. *See* AR 263–65. The team included Caitlin Kawa, a school psychologist, Daisy Smiley, a speech-language pathologist, Maria Espiritu, a DCPS evaluation coordinator, Autumn Ousley, Family Care coordinator, Wanda Banks, an occupational therapist, and G.L.'s parents. *See* AR 263. Based on this team's evaluation, G.L.'s IEP prescribed five hours per week of specialized education, one hour per month of speech language pathology, and two hours per month of occupational therapy in the general education setting; one hour per month of speech-language pathology outside the general education setting; and fifteen minutes per week of behavioral support services. *See* AR 279.

During the meeting, the IEP team informed G.L.'s parents that DCPS would provide a LOS once G.L.'s parents submitted a consent form. *See* AR 265. G.L.'s parents remarked that changing G.L.'s school might be difficult and asked if the IEP recommendations could be implemented at SECC. *See* AR 265. Smiley responded that DCPS could talk to the daycare staff but could not compel them to provide such services. *See* AR 265. After the meeting, on January 20, 2022, DCPS issued a "Prior Written Notice" which advised G.L.'s parents that they would need to complete the consent for initial provisions form to finalize the IEP. *See* AR 285–291. G.L.'s parents did not provide consent for services. *See* AR 336. G.L. remained at SECC. *See id.*

### 2. *Additional Evaluations after January 2022 IEP*

On June 1, 2022, G.L.'s parents had Capitol Kids Therapy conduct a psychological, educational, and occupational therapy evaluation of G.L. *See* AR 293–301. Capitol Kids Therapy concluded that G.L. should receive speech and language therapy and that he would benefit from specific social skills instruction in the classroom, conversational accommodations to aid him in answering questions, and small class sizes. *See* AR 301.

On September 8, 2022, Dr. Sarah Gardner, Psy.D., at Rebecca Resnik & Associates Psychological Care completed an evaluation of G.L. *See* AR 303. G.L.'s parents sought this evaluation to learn whether G.L. presented with attention-deficit/hyperactivity disorder, autism spectrum disorder, or any other condition. *See* AR 303.

Dr. Gardner diagnosed G.L. with autism spectrum disorder. *See* AR 317. Dr. Gardner's report suggested that an appropriate educational setting would include:

> [S]pecial education teachers and applied behavioral analysis with
> advanced training in remediating behaviors with autism, small
> group setting with high student to teacher ratio, daily speech
> language therapy with pull-out and push-in delivery methods,
> systematic instruction with Differential Reinforcement of Low
> Rates Behaviors and Alternative Behaviors, social skills and play
> skills instruction, regular curriculum-based assessment to track their
> progress, multisensory instruction with visual prompts, schedules,
> and pictographs, predictable structure and routine, and access to
> sensory regulation tools (e.g., deep pressure, fidgets, sensory
> breaks).

AR 317.

On October 3, 2022, G.L.'s mother emailed two of the January 2022 IEP team members asking to explore options for G.L. in DCPS. *See* AR 335–36. On October 4, 2022, Espiritu forwarded the draft IEP from January 2022 and asked G.L.'s mother if she wished to reopen the case. *See* AR 334. G.L.'s mother responded affirmatively and asked Espiritu if DCPS needed the Resnik & Associates assessment. *See id.* After reopening the case, Espiritu reminded G.L.'s parents that they needed to sign the Consent for Initial Provision of Services form before DCPS could proceed in identifying a school to enroll G.L. *See* AR 333.

By October 11, 2022, G.L.'s parents consented to services and were waiting to hear where DCPS would place G.L. *See* AR 338. On October 11, 2022, Espiritu asked G.L.'s mother for the Resnik & Associates' evaluation for addition into G.L.'s file. *See* AR 337. Espiritu explained that DCPS would consider the assessment when they conducted an IEP review thirty days after G.L. began his placement at a DCPS school. *See* AR 337.

On October 24, 2022, DCPS informed G.L.'s mother that Maury Elementary was the proposed LOS. *See* AR 343, 346. G.L.'s mother responded with concern that DCPS was placing G.L. in a general education setting. *See* AR 342–43. On October 24, 2022, Espiritu responded that the IDEA required finding the "least restrictive environment (general education classroom) before

considering a more restrictive placement." AR 341. Espiritu noted that the Maury's team would have thirty days to work with G.L.; after that, the team could make any necessary changes to G.L.'s IEP. *See* AR 341–42.

On November 11, 2022, Plaintiffs' attorney notified Maury's principal and DCPS that they would enroll G.L. at the River School beginning on November 28, 2022. *See* AR 361. The letter demanded that DCPS place and fund G.L. at the River School. *See* AR 361.

On December 6, 2022, DCPS confirmed receipt of the parents' "unilateral notice." AR 363. DCPS declined to fund private placement. *See* AR 363. DCPS noted that the River School did not have a Certificate of Approval from the Office of the State Superintendent of Education. *See* AR 363. DCPS further stated that it had provided an appropriate IEP and placement at Maury. *See* AR 363. Despite this letter, G.L.'s parents enrolled G.L. at the River School. *See* AR 361.

### 3. *January 2023 IEP*

On January 13, 2023, G.L.'s IEP team reconvened. *See* AR 366–67. On February 8, 2023, DCPS provided G.L.'s parents with a LOS stating that DCPS again decided to place G.L. at Maury. *See* AR 401.

On February 8, 2023, G.L.'s mother asked to observe the proposed program at Maury. *See* AR 401. On March 1, 2023, Stef Gordon, a special education teacher at Maury and the local education agency representative, responded that they did "not hold school day observations of classrooms, but I believe there will be some open houses coming up this spring. In addition, I am including a link of a virtual tour of the school." AR 399–400. On March 7, 2022, G.L.'s mother asked if observation of G.L.'s proposed placement at Maury would be possible and when an open house would be. *See* AR 400. Maury principal recommended attending school events on April 29 and May 11. *See* AR 399.

On March 13, 2023, DCPS asked G.L.'s family whether G.L. would enroll at Maury because the LOS expired on March 8, 2023. *See* AR 405. G.L.'s parents responded that they had not enrolled G.L. because they could not observe the program at Maury and believed the IEP DCPS provided would not provide a FAPE for G.L. *See* AR 405.

On May 25, 2023, DCPS reached out to G.L.'s parents because they "under[stood] [G.L.'s parents were] interested in reconnecting with the school to see the classrooms suggested to support [G.L.] for next school year." AR 426–27. On May 30, 2023, G.L.'s parents responded, asking to schedule an observation. *See* AR 426. That same day, Maury's principal responded with possible dates. *See* AR 424. G.L.'s parents responded that day and then circled back on June 5, 2023, to see when they could visit. *See* AR 424. On June 11, 2023, Maury's principal scheduled the observation for June 14. *See* AR 423. On June 14, 2023, G.L.'s mother visited Maury. *See* AR 429.

On August 3, 2023, Plaintiffs' attorneys notified DCPS that G.L. would remain at the River School for the 2023–24 school year. *See* AR 431. Plaintiffs' attorneys requested that DCPS fund this placement. *See* AR 431. On August 11, 2023, DCPS denied this request. *See* AR 432.

C.    <u>Procedural Background</u>

On June 27, 2023, G.L.'s attorney filed a due process complaint. *See* AR 161. Plaintiffs sought reimbursement for tuition and related costs paid to the River School in the 2022-23 school year and for DCPS to place and fund G.L.'s placement at the River School going forward. *See* AR 172.

On November 8, 9, and 20, 2023, HO Banks held a hearing. *See* AR 5. Dr. Resnik, Meredith Ouellette (Director of Clinical Services at the River School), and G.L.'s mother testified on behalf of Plaintiffs. *See* AR 6, 31–32. Kawa, Smiley, Banks, Shakeya Santa Cruz (DCPS occupational therapist), and Espiritu testified on behalf of DCPS. *See* AR 6, 31–32.

On December 11, 2023, HO Banks issued an HOD ruling in favor of Plaintiffs, in part, and in favor of Defendants, in part. *See* AR 29–30. HO Banks concluded that Plaintiffs failed to make a prima facie claim that the January 2022 IEP was inappropriate and that DCPS failed to provide a LOS for the 2022-2023 school year. *See* AR 26. Additionally, HO Banks concluded that DCPS did not deny G.L. a FAPE when it proposed Maury as the LOS. *See* AR 26. However, HO Banks concluded that DCPS denied G.L. a FAPE on January 23, 2023, when DCPS failed to provide an appropriate IEP and placement for G.L. *See* AR 27. HO Banks further concluded that DCPS's delay of G.L.'s mother's observation requests did not amount to a substantive violation. *See* AR 28. Thus, HO Banks concluded that Plaintiffs were not entitled to tuition reimbursement or continuing placement. *See* AR 28–29. HO Banks ordered that that "with[in] fifteen school days of the issuance of this HOD, DCPS shall arrange an IEP meeting through [Plaintiffs'] counsel to update Student's IEP and determine an appropriate [LOS]." AR 29.

Plaintiffs appeal the HOD in part and seek tuition reimbursement and placement at the River School. *See* Pls.' Mot. at 26.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court must grant summary judgment when "there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). The Court must view the facts "in the light most favorable to the party opposing the motion." *Williams v. Wash. Metro. Area Transit Auth.* 721 F.2d 1412, 1414–15 (D.D.C. 1983) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962) (per curiam)).

Summary judgment under the IDEA "is not a true summary judgment procedure." *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012) (quoting *Ojai Unified*

*Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993). "Instead, the district court essentially conduct[s] a bench trial based on a stipulated record." *Id.* (quoting *Ojai Unified Sch. Dist.*, 4 F.3d at 1472). Therefore, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *N.W. v. District of Columbia*, 253 F. Supp. 3d 5, 12 (D.D.C. 2017) (quoting *D.R. ex rel. Robinson v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009)).

The burden is on the plaintiff to prove by a preponderance of the evidence that the HOD was wrong. *See* 20 U.S.C. § 1415(i)(2)(C)(iii); *Pavelko v. District of Columbia*, 288 F. Supp. 3d 301, 306 (D.D.C. 2018). "While the court must make an independent determination, the court also should give 'due weight' to the decision of the hearing officer and should afford some deference to the expertise of the hearing officer and the school officials." *Middleton v. District of Columbia*, 312 F. Supp. 3d 113, 129 (D.D.C. 2018) (quoting *D.K. v. District of Columbia*, 983 F. Supp. 2d 138, 144 (D.D.C. 2013)). In accordance with this deference, "[f]actual findings from the administrative proceeding are to be considered prima facie correct," *D.R. ex rel. Robinson*, 637 F. Supp. 2d at 16 (quoting *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)), "unless [the court] can point to contrary nontestimonial extrinsic evidence on the record," *A.A. v. District of Columbia*, No. 16-cv-248, 2017 WL 11589194, at *6 (D.D.C. Apr. 20, 2017) (quoting *Savoy v. District of Columbia*, 844 F. Supp. 2d 23, 30 (D.D.C. 2012)). Courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206. Still, courts are to offer "'less deference than is conventional' in administrative proceedings." *Reid*, 401 F.3d at 521 (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989)). Pure questions of law, however, are reviewed de novo. *See id.*

## III.    DISCUSSION

### A.    Whether the HO Properly Weighed Witness Testimony

The HO, as "the trier of fact at the due process hearing," has the "responsibility to determine how much weight to give the evidence." *A.I. ex rel. Iapalucci v. District of Columbia*, 402 F. Supp. 2d. 152, 170 (D.D.C. 2005). There are strong policy considerations for providing the HO such leeway: the HO can "hear testimony in person, examine the demeanor of the witness and reactions of the participants, and can bring immeasurable experience." *See id.* However, HODs that lack reasoned and specific findings deserve little deference from a court. *See Turner v. District of Columbia*, 952 F. Supp. 2d 31, 36 (D.D.C. 2013) (citations and quotation marks omitted). An HOD is sufficient when it includes "numerous findings of fact by the Hearing Officer that were based on the testimony of [p]laintiffs' witnesses." *B.B.*, 2022 WL 834146, at *11. Ultimately, "[a] reviewing court may fairly expect [school] authorities to be able to offer a cogent and responsive explanation for their decisions that show[] the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances." *Endrew F.*, 580 U.S. at 388.

Plaintiffs argue that the HO's decision lacked reasoned and specific findings. *See* Pl.'s Mot. at 19 (citing *M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 41 (D.D.C. 2013)). In *M.O.*, the HO made "conclusory" statements about the adequacy of the IEP "[i]n the face of extensive evidence to the contrary." 20 F. Supp. 3d at 40. The *M.O.* court was particularly troubled that the HOD made *no* references to specific facts or testimony. *See id.* at 41. In contrast, in *B.B.*, the HOD made three references to Plaintiff's witnesses. *See* 2022 WL 834146, at *11. The *B.B.* court found this to be sufficient. *See id.*

HO Banks made more than three references to the testimony of all of Plaintiff's witnesses. *See* AR 4–26. For example, in determining whether the River School was an appropriate placement

for the Student, HO Banks considered that "[Plaintiff's witness], who recently served as Assistant Head of the [River] School, was unaware if the school required special education certification of any of its teachers, which strongly suggests that it does not." AR 29. The HO also noted that Plaintiff's witness "conceded that [the River School] does not provide OT or [Behavioral Support Services] . . . and [the River School] is not implementing DCPS' IEP." AR 20. From this testimony, the HO made a reasoned and specific finding: "[the River School] offers virtually none of the services recommended by [Dr. Resnik] in her evaluation." AR 29. The HO made this conclusion after specifically referencing Dr. Resnik's list of recommendations for G.L. *See* AR 29. These detailed references by the HO far surpass the H.O. in *B.B. See* 2022 WL 834146, at *11. Thus, *M.O.* is inapplicable. *See* 20 F. Supp. 3d at 40–41. And these "[reasoned] findings 'based on the credibility of live witness testimony' are given 'particular deference.'" *Edward M.-R by & through T.R.-M. v. District of Columbia*, 660 F. Supp. 3d 82, 97 (quoting *B.B.*, 2022 WL 834146, at *5).

Plaintiffs next challenge the weight given to DCPS witnesses whom Plaintiffs claim had "little knowledge" of G.L. *See* Pls.' Mot. at 19. But the Plaintiffs' emphasis on "the need for witnesses with detailed first-hand knowledge regarding [G.L.'s] needs is somewhat misplaced because the issues in this case are not [] about the services [G.L.] needs [] but rather, whether the proposed placement can implement [G.L.'s] IEP." *A.T. v. Columbia*, No. 16-cv-1086, 2021 WL 1978792, at *6 (D.D.C. May 18, 2021). The River School could not implement G.L.'s IEP, *see* supra, whereas Maury could, *see* AR 16. "Moreover, even if Plaintiffs' witnesses had more experience with [G.L.] on paper, the Hearing Officer is still entitled to deference in the absence of 'extrinsic evidence' contradicting the Hearing Officer's credibility determinations." *W.S. v.*

*District of Columbia*, 502 F. Supp. 3d 102, 124 (D.D.C. 2020) (citing *McAllister v. District of Columbia*, 45 F. Supp. 3d 72, 77 (D.D.C. 2014).

Relatedly, Plaintiffs argue that DCPS's witnesses failed to provide the "cogent and responsive explanation required of them under the IDEA." Pls.' Opp'n to Def.'s Cross-mot. Summ. J. & Reply ("Pls.' Opp'n") 4, ECF No. 16. Reliable hearing testimony from multiple education professionals who had firsthand involvement with a student's IEP satisfies this requirement of the IDEA. *B.B.*, 2022 WL 834146, at *12. Here, DCPS presented testimony about the development of G.L.'s IEP from several educational professionals who were involved in his evaluation and initial IEP meeting. *See* AR 31–32. This included Kawa, Banks, and Espiritu. *See* AR at 31–32, 976–77, 1083–84, 1115. This was more than sufficient. In fact, the *B.B.* court found that the HO only needed to credit two of DCPS's witnesses. *See* 2022 WL 834146, at *12. The *B.B.* HO properly credited those two educational professionals—who had similarly evaluated the student as the three did here—despite plaintiff's identical claim that those DCPS's witnesses had "minimal first-hand knowledge." *Id.* "Plaintiffs' argument that the DCPS witnesses were not cogent or responsive [was] not supported by the record [in *B.B.*, nor is it here], and furthermore, there is no evidence that blind deference was accorded to these witnesses by the [HO]." *Id.*; *see* AR 31–32.

### 1.    *The HO Properly Struck Dr. Resnik's Testimony*

Parties must disclose all evaluations to other parties "at least five business days prior to a hearing." 34 C.F.R. § 300.512(b)(1). The regulations permit a HO to "bar any party that fails to comply with . . . this section from introducing the relevant evaluation or recommendation at the hearing without the consent of the other party." 34 C.F.R. § 300.512(b)(2).

The HO excluded part of Dr. Resnik's testimony because it was based on behavior scales that the Plaintiff did not timely disclose to DCPS. *See* AR 6 n.2. Plaintiffs argue that this finding by the HO was mistaken because Dr. Resnik had no new evaluation to submit. *See* Pls.' Opp'n to Def.'s Cross-mot. Summ. J. & Reply ("Pls.' Reply") 4, ECF No. 17. But it is Plaintiffs that are mistaken. The HO's factual finding "[is] to be considered prima facie correct," *D.R. ex rel. Robinson*, 637 F. Supp. 2d at 16 (quoting *S.H.*, 336 F.3d at 270), "unless [the court] can point to contrary nontestimonial extrinsic evidence on the record," *A.A.*, 2017 WL 11589194, at *6 (quoting *Savoy* 844 F. Supp. 2d at 30). Plaintiffs pointed to no extrinsic evidence to rebut the HO's finding that Dr. Resnik's testimony was based on undisclosed assessments. *See* Pls.' Reply at 4; AR 6 n.2. "The HO's discretion was, as a result, properly exercised." *Cooper v. District of Columbia*, 77 F. Supp. 3d 32, 40 (D.D.C. 2014).

An IEP should be revised and reviewed "periodically, but not less frequently than annually, to determine whether the annual goals for the child are being achieved." 20 U.S.C. § 1414(d)(4)(A)(i). The IEP review should include consideration of "[e]valuations and information provided by the parents." *Id.* § 1414(c)(1)(A)(i). But there is no timeline for the revision of an IEP after the agency receives a new evaluation from the parents. *See* 20 U.S.C. § 1414(d)(4)(A)(ii).

Plaintiffs argue that the IDEA required DCPS to update G.L.'s 2022 IEP based on the results of Dr. Resnik's September 2022 evaluation, which in turn should have driven DCPS's placement decisions. *See* Pls.' Reply & Opp'n at 6 (citing 34 C.F.R. §§ 300.324(a)(ii) and 300.324(b)(ii)(C)). Whether an IEP or placement is proper is based on "what the school knew or reasonably should have known of a student's needs at the time." *See Z.B. v. District of Columbia*, 888 F.3d 515, 524 (D.C. Cir. 2018) (citing *Endrew F.*, 580 U.S. at 399–400). DCPS did not have Dr. Resnik's report when it developed the January 2022 IEP, so it was properly based on what

DCPS knew at that time. *See* AR 16, 25–26. Moreover, DCPS did not have to reconsider G.L.'s IEP based on Dr. Resnik's subsequent assessment because there is no strict timeline for revision of an IEP after a new evaluation. *See* 20 U.S.C. § 1414(d)(4)(A)(ii). Regardless, any delay in revising G.L.'s IEP was not a denial of FAPE because The River School was not implementing his IEP. *See Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003); AR 20. "[I]f a student [was] actually being educated under an inappropriate IEP, and state officers failed to review it in a timely manner, the delay might, in a particular instance, constitute a violation of the IDEA. That was not the case here." *Grim*, 346 F.3d at 381.

Regardless, as DCPS notes, Plaintiffs failed to argue that DCPS was untimely in addressing Dr. Resnik's September 2022 evaluation in their due process complaint. *See* Def.'s Reply 6, ECF No. 20; AR 6–7. In so doing, Plaintiffs "fail[ed] to exhaust administrative remedies . . . [which] deprives the court of its authority to hear [this] IDEA claim." *B.R. ex rel. Rempson*, 802 F. Supp. 2d 153, 162 (D.D.C. 2011) (citing 20 U.S.C. § 1415(c), (e)).

2.    *The HO Properly Limited Ouellette's Testimony*

In IDEA hearings, parents have "the right to be accompanied and advised . . . by individuals with special knowledge or training with respect to the problems of children with disabilities." 20 U.S.C. § 1415(h)(1). However, HOs may limit expert testimony. In *District of Columbia Int'l Charter Sch. v. Lemus*, the HO properly limited a speech-language pathologist's testimony to "deficiencies in English proficiency" rather than the Defendant's broader proposed category of "communications." 660 F. Supp. 3d 1, 15 (D.D.C. 2023).

Here, the HO limited the testimony of Ouellette, a speech-language pathologist at the River School, to "speech-language needs" rather than "general special education." AR at 850–52. The HO created a sufficient record to support this decision. First, Ouellette was testifying outside of

her area of expertise: she was an expert in speech-language pathology, not general special education service. *See* AR 443–44. Second, Ouellette did not participate in the development of the January 2022 IEP, so she had little perspective to add on it. *See* AR 529. Third, Ouellette's testimony about the River School was unconvincing. Ouellette was unaware of: how many of the students at the River School had a disability; how many River School teachers held special education certifications, and G.L.'s River School teacher's certification. *See* AR 20. In fact, Ouellette did not know whether the River School required its teachers to have special education certifications at all. *See* AR 20. These gaps understandably undermined Ouellette's credibility as to "general special education" in HO Banks's view. *See Sebastian M. v. King Philip Regional Sch. Dist.*, 685 F.3d 79, 86 (1st Cir. 2012) (holding that a witness who had never assessed or observed a student did not have sufficient knowledge to weigh in on the adequacy of an IEP). "The valuation of expert testimony is precisely the sort of first-instance administrative determination that is entitled to judicial deference by the district court." *Id.*

     **B.**    <u>DCPS's Alleged Denials of FAPE in 2022</u>

            1.    *Plaintiffs Failed to Make a Prima Facie Case that the January 2022 IEP Was Inappropriate*

"The key inquiry regarding an IEP's substantive adequacy is whether . . . the IEP it offered was reasonably calculated to enable the specific student's progress." *Z.B.*, 888 F.3d at 524 (citing *Endrew F.*, 580 U.S. 386 at 399). When determining whether an IEP was reasonably calculated to provide a FAPE, the pertinent question is "whether [DCPS] was 'capable of substantially implementing [G.L.'s] IEP." *W.S.*, 502 F. Supp.3d at 122. (quoting *Johnson v. District of Columbia*, 962 F. Supp. 2d 263, 268 (D.D.C. 2013))

> Where there is a dispute about the appropriateness of the child's [IEP] or placement, or of the program or placement proposed by the public agency, the public agency shall hold the burden of persuasion

on the appropriateness of the existing or proposed program or placement; provided, that the party requesting the due process hearing shall retain the burden of production and shall establish a prima facie case before the burden of persuasion falls on the public agency.

D.C. Code § 38-2571.03(6)(A). The burden of production is met if a litigant comes forward with evidence that, "if believed by the trier of fact," would support its position. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

To show that an IEP is inadequate, Plaintiffs "must identify a flaw in the . . . IEP." *Edward M.R. v. District of Columbia*, 128 F.4th 290, 294 (D.C. Cir. 2025). *Jalloh v. District of Columbia* highlights what this requirement means. 968 F. Supp. 2d 203, 212 (D.D.C. 2013). There, DCPS did not violate the IDEA based in part on the parents' failure to raise any substantive concerns about the IEP. *Id.* Similarly, G.L.'s parents did not object to the January 2022 IEP when DCPS developed it. *See* AR 26.

Indeed, Plaintiffs still have not articulated a substantive objection to the 2022 IEP. *See* Pls.' Mot. at 12–15. For example, Plaintiffs' claim that "the parents and their experts presented significant evidence as to how the proposed IEPs . . . denied G.L. a FAPE," but Plaintiffs do not specify what this evidence was. Pls.' Mot. at 14. At the hearing, Plaintiffs presented as witnesses: Dr. Resnik, and Ouellette. *See* AR 6. As stated above: the HO properly discounted Dr. Resnik's evaluation, which was completed eight months after the development of the challenged IEP, *see* AR 16; and the HO correctly barred Ouellette from testifying about G.L.'s general special education needs, *see* AR 850–52. Thus, the HO did not err in finding that Plaintiffs failed to offer evidence that, if believed by the trier of fact, would support their claim that the 2022 IEP was inadequate. *See W.S.*, 502 F. Supp. 3d at 120.

17

Lastly, Plaintiffs claim that the HO should not have considered evidence from DCPS's witnesses when ruling on whether Plaintiffs had made a prima facie case. *See* Pls.' Mot. at 14. But this error was immaterial. Substantial evidence supported the HO ultimate determination that DCPS met its burden of persuasion on the appropriateness of the 2022 IEP. *See* AR 23–26; *cf. Reno Hilton Resorts v. N.L.R.B.*, 196 F.3d 1275, 1282 (D.C. Cir. 1999) (holding that an ALJ's misapplication of a burden-shifting framework was harmless so long as the substantive evidence supported the HOD). DCPS presented testimony from an occupational therapist, evaluation coordinator, and school psychologist. *See* AR 25–26. All three participated in the development of the January 2022 IEP and agreed on its appropriateness. *See* AR 25–26. Regarding the "substance" of the "'proper education for a disabled child' . . . [the] IDEA requires great deference to the views of the school system rather than those of even the most well-meaning parent." *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 328 (4th Cir. 2004) (quoting *Barnett v. Fairfax Cnty. Sch. Bd.*, 927 F.2d 146, 152 (4th Cir. 1991). And, again, G.L.'s parents agreed on the appropriateness of the January 2022 IEP at the meeting. *See* AR 26. This was an independent basis to support the HO's conclusion. *See* supra. Thus, the Court defers to the HO's finding that DCPS met its burden of persuasion that the IEP was appropriate. *See Schoenbach v. District of Columbia*, 309 F. Supp. 2d 71, 81 (D.D.C. 2004).

> 2.    *Plaintiffs Failed to Make a Prima Facie Case that DCPS Failed to Make a Proper Placement for G.L.*

Plaintiffs retain the burden of establishing a prima facie case that the placement was inappropriate before the burden shifts to the agency. *See* D.C. Code § 38-2571.03(6). "[T]he burden of production for a prima facie case is low." *W.S.*, 502 F. Supp. 3d at 120. But the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A parent's failure to comply with the IEP may foreclose relief. In *N.G. v. E.L. Haynes*, the parents refused to keep their child in summer school. No. 20-cv-1807, 2021 WL 3507557, at *14 (D.D.C. July 30, 2021). The "parent[s'] failure to cooperate with this IEP requirement, prevented [the school from having] 'a reasonable opportunity to provide [the student a FAPE],' and thereby [the] parents 'forfeited their claim for reimbursement for a unilateral private placement.'" *Id.* at *14 (quoting *Patricia P. v. Bd. of Educ. of Oak Park*, 203 F.3d 462, 469 (7th Cir. 2000)).

Here, Plaintiffs claim that DCPS failed to provide a placement for G.L. for the 2022–23 year. *See* Pls.' Mot. at 12. But G.L.'s parents' failure to comply with the IDEA until October 2022 forecloses relief. The parents of a child with a disability must consent to the initial provision of special education and related services before the agency can consider placement. *See* 20 U.S.C. § 1414(a)(1)(D)(i). In January 2022, DCPS advised G.L.'s parents of this requirement. *See* AR 13. However, G.L.'s parents did not provide written consent until October 5, 2022. *See* AR 16. Because Plaintiffs "never met the condition precedent to receive a [placement]," they cannot claim DCPS denied G.L. FAPE by not providing one. AR 26; *see N.G.*, 2021 WL 3507557, at *14.

As to the rest of the 2022–23 school year: on October 24, 2022, DCPS explained that it would place G.L. at Maury. *See* AR 16. On November 11, 2022, G.L.'s parents notified DCPS that they objected to placement in a general education setting. *See* AR 16. However, their objection ignores that the IDEA requires placement in the least restrictive environment before considering a more restrictive one. *See* 20 U.S.C. § 1413(e)(4)(B). This provision justified DCPS's placement in a general education setting. *See id.* G.L.'s parents also expressed displeasure that DCPS' based its placement on the January 2022 IEP, which was 10 months old at the time. *See* AR 16. But it was not inappropriate for DCPS to base G.L.'s placement on the January 2022 IEP. That IEP was not due for an update until January 2023, nor had Plaintiffs objected to it at the time of its

formation, nor did DCPS have Dr. Resnik's psychological evaluation until October 24, 2022. *See* AR 16.

    C.    <u>Whether Plaintiffs' Delayed Observation of Maury Elementary Amounted to a Substantive Violation of the IDEA</u>

Schools are required to permit parents "timely access" to observe a child's proposed special education program. D.C. Code § 38–2571.03(5)(A). However, "[a] school district's failure to comply with the procedural requirements of IDEA will be 'actionable' only 'if those procedural violations affected the student's substantive rights.'" *Leggett v. District of Columbia*, 793 F.3d 59, 67 (D.C. Cir. 2015) (quoting *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 832, 834 (D.C. Cir. 2006).

Plaintiffs argue that Maury's delay in allowing them to observe the school environment denied them meaningful participation in the placement process. *See* Pls.' Mot. at 22. It is true that DCPS's delayed response was a procedural violation of G.L.'s parents' rights. *See Shaw v. District of Columbia*, 238 F. Supp. 2d 127, 135 (D.D.C. 2002). Four months passed between their request for observation and the earliest proposed date from Maury. *See* AR 19–28. This delay fails to comply with the "timely access" required by the IDEA. D.C. Code § 38–2571.03(5)(A); *see Shaw*, 238 F. Supp. 2d 127 at 135 (agency committed a "procedural flaw" when it completed a referral form one month after it was due).

However, because DCPS allowed G.L.'s parents to observe Maury—which they later did—this case does not rise to a substantive violation. *See* AR 28. *Middleton* provides a helpful benchmark. 312 F. Supp. 3d at 148. In *Middleton*, the school prohibited the student's expert from *ever* observing the student in school until the expert signed a confidentiality agreement. *See id.* In making this stringent predicate requirement, the school "denied [the parents'] participation rights." *Id.* at 147. Here, DCPS merely delayed G.L.'s parent's visit; DCPS did not permanently foreclose

their opportunity to observe by imposing improper pre-conditions. *See* AR 28. This fact distinguishes *Middleton*. 312 F. Supp. 3d at 147. Thus, this was a procedural violation. And procedural violations that schools eventually correct without causing substantive harm are not actionable under the IDEA. *See J.N. v. District of Columbia*, 677 F. Supp. 2d 314, 318 (D.D.C. 2010) (holding that DCPS did not violate the IDEA when they delayed evaluations but eventually completed them).

Moreover, "[a] delay does not affect substantive rights if the student's education would not have been different had there been no delay." *D.R. ex rel. Robinson v. District of Columbia*, 637 F. Supp. 2d 11, 18 (D.D.C. 2009). Here, the delay in observation did not affect G.L.'s substantive rights because G.L.'s parents never had a "genuine interest" in Maury. *See* AR 28. Plaintiffs respond that this was not the case. Pls.' Mot. at 25–26. But the timeline reflects their consistent aversion to Maury. *See* AR 16–28. In October 2022, DCPS notified parents of the placement. *See* AR 16. Less than a month later, G.L.'s parents rejected that placement and unilaterally enrolled G.L at the River School. *See* AR 16. Critically, G.L.'s parents made no request for observation before this first rejection of Maury. *See* AR 16. Because Plaintiffs never intended to move G.L. to Maury, the subsequent delay in observation was only a procedural violation.

Regardless, the January 2022 IEP meeting notes reflect that Plaintiffs directly participated, asked questions, and provided input in a collaborative manner in the development of G.L.'s IEP. *See* AR 263–266. DCPS then informed Plaintiffs that Maury could implement the proposed IEP. *See* AR 346. DCPS then provided Plaintiffs with additional information and gave them an opportunity to observe. *See* AR 399–406; 423–430. The requirement that G.L.'s mother have "meaningful participation" was satisfied when she had "substantial opportunity to participate—

and did participate—in the [2022] IEP meeting." *J.T. v. District of Columbia*, 496 F. Supp. 3d 190, 203 (D.D.C. 2020).

        D.      <u>Whether G.L. is Entitled to Tuition Reimbursement</u>

The "IDEA requires school districts to reimburse parents for their private-school expenses if (1) school officials failed to offer the child a [FAPE] in a public . . . school; (2) the private-school placement chosen by the parents was otherwise 'proper under the Act'; and (3) the equities weigh in favor of reimbursement—that is, the parents did not otherwise act 'unreasonabl[y].'" *Leggett*, 793 F.3d at 66–67 (quoting *Florence Cnty. Sch. Dist. Four*, 510 U.S. at 15–16). The parties do not dispute the HO's conclusion that DCPS denied G.L. a FAPE in January 2023. *See* AR 27. Therefore, Plaintiffs need only satisfy the second and third elements of *Leggett* for tuition reimbursement.

        *1.*      *The River School Was Not a Proper Placement*

A unilateral private-school placement is proper when it is "reasonably calculated to enable the child to receive educational benefits." *Leggett*, 793 F.3d at 71 (quoting *Rowley*, 458 U.S. at 207). Like a public placement, a unilateral private placement "need not guarantee the best possible education or even a potential maximizing one." *M.G. v. District of Columbia*, 246 F.Supp.3d 1, 12 (D.D.C. 2017) (quoting *Leggett*, 793 F.3d at 70). In *Leggett*, the student's private school placement was proper because "it was the only placement on record that could have provided [her] with an education that met her identified needs." 793 F.3d at 71–72. The private placement would not have been appropriate if DCPS had offered an alternative with the same services. *See id.*

The HO concluded that the River School could *not* have provided G.L. with an education that met his identified needs. *See id.* First, the River School did not have a certificate of approval[2] from the Office of the State Superintendent of Education. *See* AR 29. Worse yet, the services at the River School fell below the standard G.L.'s parents previously requested and what Maury could have provided.[3] *See* AR 29. Indeed, the HO concluded that the River School offered only a few of the services recommended by Dr. Resnik's evaluation. *See* AR 29. The HO further concluded that the River School did not have the "staff necessary to provide the services recommended for [G.L.] by [Dr. Gardner]." AR 29. The Assistant Head of The River School was unaware if there were any licensed special education teachers, which suggests there was not. *See* AR 29. Unlike in *Leggett*, G.L. had a public-school option offering more of the IEP services he needed than the private school he sought to attend. *See* 793 F.3d at 71–72; AR 28–29. Thus, the River School was not a proper placement. *See Leggett*, 793 F.3d at 71–72.

### 2. *The Equities Do Not Weigh in Favor of Reimbursement*

"Reimbursement . . . may be 'reduced or denied' if the parents fail to notify school officials of their intent to withdraw the child, deny them a chance to evaluate the student, or . . . otherwise act 'unreasonabl[y.]'" *Leggett*, 793 F.3d at 63 (citations omitted). "[T]he IDEA was not intended to fund private school tuition for the children of parents who have not first given the public school a good faith opportunity to meet its obligations." *Rockwall Indep. Sch. Dist. v. M.C.*, 816 F.3d 329,

---

[2] "To be eligible to serve a student with a disability whose education is funded by [DCPS], a nonpublic special education school . . . must hold and maintain a certificate of approval issued by the Office of the State Superintendent of Education." *Nonpublic Oversight: OSSE Policy and Guidance*, DC.Gov: OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION (May 11, 2023), https://osse.dc.gov/page/nonpublic-oversight-osse-policy-guidance.

[3] Plaintiffs argue that DCPS placed students at the River School when it had a certificate of approval in the past. *See* Pl.'s Reply & Opp'n at 11. But what happened in the past was irrelevant to evaluation of The River School at the time of placement.

341 (5th Cir. 2016) (quoting *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 72 (3d Cir. 2010). "[C]ourts have held uniformly that reimbursement is barred where parents unilaterally arrange for private educational services without ever notifying the school board of their dissatisfaction with their child's IEP." *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F. 3d 60, 68 (2d Cir. 2000).

In *Schoenbach*, the court denied tuition reimbursement because the parents acted unreasonably. 309 F. Supp. 2d at 87. After DCPS placed the child in a public school, the parents there sent DCPS a letter with "no requests for more services or even an ultimatum, but a *fait accompli* in unconditional language." *Id.* at 88. This mirrors G.L.'s parents' tactics. On October 24, 2022, DCPS notified them that of the placement at Maury based on the January 2022 IEP. *See* AR 16. On November 11, 2022, G.L.'s parents notified DCPS that they would enroll G.L. at the River School and sought to hold DCPS responsible for the tuition. *See* AR 16. On December 6, 2022, DCPS declined to fund the placement. *See* AR 16–17. At the January 13, 2023 IEP meeting, DCPS again reiterated their placement for G.L. was at Maury. *See* AR 17. DCPS did not learn of G.L.'s parents' discontent with the placement at Maury until Plaintiffs' attorney sent DCPS a letter in August 2023 notifying DCPS of G.L.'s continued placement at the River School. *See* AR 431. "[R]eimbursement for private school tuition depend[s] on the parents cooperating with school authorities in determining proper placement and educational plan for the child." *Schoenbach*, 309 F. Supp. 2d at 87 (quoting *Greenland Sch. Dist. v. Amy N.*, 358 F.3d 150, 160 (1st Cir. 2004). Rejecting DCPS's placement with "no requests for more services or even an ultimatum" balances the equities against reimbursement. *See Schoenbach*, 309 F.Supp.2d at 88.

## IV.   RECOMMENDATION

The undersigned recommends that this Court DENY Plaintiffs' Motion for Summary Judgement and GRANT Defendant's Cross-Motion for Summary Judgement.[4]

Date: August 22, 2025

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

---

[4] Per Local Rule 72.3(b), any party who objects to the Report and Recommendation must file a written objection with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and recommendation to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Judge that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).